NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 34

No. 2020-015

| | |
|---|---|
| In re A.W. & A.W., Juveniles | Supreme Court |
| | On Appeal from<br>Superior Court, Franklin Unit,<br>Family Division |
| | April Term, 2020 |

Howard E. Van Benthuysen, J.

Matthew Valerio, Defender General, and Kerrie Johnson, Juvenile Defender, Montpelier, for Appellants.

Michael Rose, St. Albans, for Appellee Mother, and Allison N. Fulcher, Barre, for Appellee Father.

PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.  **CARROLL, J.**    Children appeal the family division's decision terminating mother's and father's parental rights following voluntary relinquishments by both parents. Children argue that the court lacked the power to modify the disposition order to terminate parental rights because children did not consent to termination and the court did not hold an evidentiary hearing to determine whether termination was in children's best interests.  We agree, and reverse and remand for further proceedings.

¶ 2.    Daughter A.W. was born in October 2013 and son A.W. was born in June 2017.  In February 2019, father was charged with domestic assault for attempting to strangle daughter, who was five years old at the time.  As a result, the Department for Children and Families (DCF) filed

petitions alleging that daughter and son were children in need of care or supervision (CHINS). DCF had accepted five previous reports asserting both physical abuse of daughter and mother by father and concerns that son was not gaining weight or receiving medical care. The court granted emergency- and temporary-care orders transferring custody to DCF. Children were placed with their paternal grandparents.

¶ 3. In March 2019, both parents stipulated that daughter and son were CHINS due to father's physical abuse of daughter and statements indicating a risk of harm to son. In May 2019, the court entered a disposition order and adopted a case plan calling for reunification with one or both parents by November 2019. At the time, both parents were engaged in services. Mother was seeing children two to three times a week. Father was subject to a condition of release prohibiting contact with children except as approved by DCF. DCF approved father to have contact with son in mother's presence. Daughter had begun seeing a counselor and DCF indicated that it would approve contact with father as recommended by the counselor. At a post-disposition review hearing in July 2019, the parties stipulated to maintain the existing disposition order and case plan.

¶ 4. In October 2019, the court held a status conference. Counsel for the State represented that father's criminal case remained pending and that father was not making progress in counseling and had been missing visits with children. Mother was attending visits with the children, but continued to live with father, complicating efforts to reunify children with her.

¶ 5. Mother and father voluntarily relinquished their parental rights at a hearing in December 2019. At the beginning of the hearing, the court stated that it understood children's attorney and the guardian ad litem (GAL) did not support relinquishment. Children's attorney responded, "I see it as two separate things: whether to take the relinquishment and whether to— and then what to do next." He agreed that the GAL did not support termination of parental rights. Children's attorney suggested that the court should accept the relinquishment and then consider whether termination was in the children's best interests. The court responded that by relinquishing

2

their rights, parents would effectively concede that termination was in the children's best interests, resolving that question and making the focus the proper placement of the children. Children's attorney argued that there was no case plan advocating for termination or discussing post-termination placement. He argued that the children were not bound by parents' agreement that termination was in their best interests. The court disagreed, stating that "we have what amounts to, in civil parlance, a stipulation that resolves the litigation in a way that the two principal parties think is appropriate. . . . And I think the parents are free to relinquish, if that's what they feel is in their and the children's best interest."

¶ 6.     The court then conducted an extensive colloquy with mother and father, who indicated that they wished to relinquish their parental rights. The court admitted parents' written agreements to terminate parental rights into evidence. The agreements were not signed by the GAL or the children's attorney.

¶ 7.     The court then asked the GAL to speak. The GAL stated that he believed the problems in the case were solvable, that the children wished to see their parents, and that he believed parents should have more time to reunify. The court asked mother and father if the GAL's statement had changed their minds about relinquishing their parental rights. Both parents indicated that they still wished to relinquish and believed relinquishment was in children's best interests.

¶ 8.     Children's attorney asked if the court planned to make findings as to termination, noting that no party had filed a motion to modify the disposition order. The court stated that it believed parents could end the litigation even without a motion. Children's attorney asked the court to require DCF to file a motion to modify disposition and an updated disposition report, and to hold a hearing on the best interests of the children. He asked the court to not terminate mother's parental rights that day because a permanent guardianship could be imposed. The State's attorney objected that mother did not want a permanent guardianship and had specifically stated she did not want a post-adoption-contact agreement. The parents' attorneys agreed that neither of them was

3

interested in a permanent guardianship. The court found that the parents understood their options and wanted to relinquish. It accordingly terminated their residual parental rights.

¶ 9. On appeal, children argue that the court lacked the power to modify its previous disposition order to terminate parental rights based on parents' stipulations because children did not consent and there was no motion to modify or best-interests hearing.[1] Whether the family division had the power to terminate parental rights in these circumstances is a question of statutory interpretation that we review without deference. In re A.W., 2013 VT 107, ¶ 5, 195 Vt. 226, 87 A.3d 508 (explaining that this Court reviews questions of statutory interpretation de novo).

¶ 10. We begin by noting that when the family court is adjudicating a CHINS proceeding, "it is exercising special and very limited statutory powers." In re M.C.P., 153 Vt. 275, 302, 571 A.2d 627, 642 (1989). "Generally, unless there is statutory authority for a particular procedure, the court does not have the power to employ it." Id. We agree with children that the procedure followed by the court in this case was not authorized under the statute.

¶ 11. In terminating parental rights, the court modified the existing disposition order, which had established a permanency goal of reunification with mother or father. The CHINS statute provides that "[a] disposition order is a final order which may only be modified based on the stipulation of the parties or pursuant to a motion to modify brought under section 5113 of this title." 33 V.S.A. § 5318(d). A child who is a subject of a CHINS proceeding is a party to that proceeding.[2] Id. § 5102(22). Accordingly, the child must agree to a stipulation for it to be a valid

---

[1] Children also argue that the court's actions violated their constitutional rights to due process and equal protection. We do not reach children's constitutional arguments because we agree that reversal is required under the CHINS statute.

[2] Although children suggest that the GAL's consent is also necessary for a stipulation to modify a disposition order to terminate parental rights to be valid, the statute does not support their interpretation. The GAL is not listed as a "party" to a CHINS proceeding under § 5102(22), and § 5112(b) specifically provides that the GAL is not a party. The GAL's objection would therefore not prevent the parties from stipulating to modify a disposition order.

basis to modify a disposition order. If a child or any other party does not stipulate to modify an existing disposition order to terminate parental rights, a motion to modify the disposition order must be filed to achieve that result. The court must then hold a hearing—unless the parties agree otherwise—and independently determine whether there has been a change in circumstances requiring modification of the disposition order to serve the best interests of the child. Id. § 5113; see also id. § 5114 (listing factors court must consider in best-interests determination). Here, no party filed a motion to modify the existing disposition order prior to the December 2019 hearing at which parents relinquished their rights.[3] Under these circumstances, the court lacked the authority to modify the disposition order.

¶ 12. In general, courts favor voluntary settlement of child custody issues. Damone v. Damone, 172 Vt. 504, 511, 782 A.2d 1208, 1214 (2001) (explaining in context of divorce case that "[a]greements regarding parental rights and responsibilities are presumptively in the best interests of the child, and such agreements may be disregarded only when the court finds that the agreement is not in the best interests of the child or that it was involuntarily entered into"). However, in the CHINS context the court is exercising limited statutory powers and its actions must conform to the statute. In re A.M., 2019 VT 79, ¶ 13, __ Vt. __, 222 A.3d 489 ("The fact that the family division has unlimited authority to award or modify child support in divorce, parentage, and other types of proceedings does not mean that it may do so in a CHINS proceeding."). There is no provision in the statute permitting a court to modify a disposition order and terminate parental rights based on parents' stipulations alone. In the relatively unusual situation presented here, where children object to their parents' voluntary agreements to terminate parental rights, the court

---

[3] The court filed its own motion to modify disposition the day after the hearing. The court is permitted to modify a disposition order on its own motion. 33 V.S.A. § 5113(b). However, it cannot modify the order until it notifies the parties and holds a hearing. Id. § 5113(c). The court did not conduct a further hearing on the motion to modify, and there is no evidence that the parties stipulated to waive such a hearing. The court's motion therefore did not provide a basis to modify the disposition order and terminate parental rights.

may terminate parental rights only after notice and a hearing to determine whether such action is in children's best interests in accordance with the factors set forth in 33 V.S.A. § 5114.

¶ 13. The State argues that children's appeal is moot because parents validly relinquished their parental rights and therefore no alternative disposition besides termination is available. We disagree. Although evidence of a parent's relinquishment may carry weight in considering whether termination is in a child's best interests, in the absence of a stipulation by all the parties, the court is not required to accept a relinquishment, and terminate parental rights, if it finds that the agreement is not in the best interests of the children. 33 V.S.A. § 5113(b) (stating court may only modify disposition order if in best interests of children). A relinquishment is not determinative on the issue of the ultimate termination of a parent's rights; the child's best interests must still be considered. As children point out, we cannot review whether termination was in children's best interests in this case because the court failed to hold a hearing and made no findings.

¶ 14. Because children did not agree to termination and no hearing was held to determine whether termination was in their best interests, the court lacked authority to modify the disposition order to terminate parental rights. On remand, unless the parties stipulate otherwise, the court shall hold an evidentiary hearing in accordance with 33 V.S.A. §§ 5113 and 5114.

<u>Reversed and remanded</u>.

FOR THE COURT:

_____

Associate Justice

6